IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MACLEAN-FOGG COMPANY, a Delaware Corporation, and MACLEAN POWER, LLC, a Delaware Limited Liability Company,<br><br>      Plaintiffs,<br>  v.<br><br>NINGBO FASTLINK EQUIPMENT, CO., LTD., an Alien Company, DAVID ZHANG, an Alien, CHARLIE JIN, an Alien, INTERNATIONAL CABLE CORPORATION, a Massachusetts Corporation, and CABLENETWORK ASSOCIATES, INC., a Florida Corporation,<br><br>      Defendants. | Civil Action No. 08CV2593<br><br>Judge Guzman<br><br>Magistrate Judge Ashman<br><br>**WRITTEN REPORT OUTLINING THE PROPOSED JOINT DISCOVERY PLAN** |

By Order dated June 26, 2008, the Court directed the parties in Civil Action No. 08CV2593 to submit a written report outlining their proposed discovery plan pursuant to the Court's case management procedures. Through their respective undersigned counsel, and pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and the Court's case management procedures, MacLean-Fogg Company and MacLean Power, LLC (collectively "MacLean" or "Plaintiffs") telephonically discussed the issues set forth in those Rules and procedures with the Defendants, International Cable Corporation ("ICC") and CableNetwork Associates, Inc. ("CNA"). Defendants Ningbo Fastlink Equipment, Co., Ltd ("Ningbo Fastlink"), Charlie Jin, and David Zhang, failed to respond to MacLean's good-faith attempt to schedule a conference.

On the morning of today, July 8, 2008, MacLean delivered to CNA and ICC its first draft of the proposed report and joint discovery plan. This afternoon, CNA delivered its comments to MacLean, who advised CNA that MacLean would be submitting its own version of the report

and plan. Therefore, CNA hereby submits this report and proposed discovery plan based on the information provided by MacLean and ICC.

I. **PLAINTIFFS' FACTUAL STATEMENT OF THE CLAIMS AND BRIEF STATEMENT OF THE LEGAL ISSUES**

**MacLean alleges as follows**:

This is an action for counterfeiting and infringement of MacLean's trademarks Strandvise, Strandlink, Wirevise, and Wirelink (referred to collectively as the "Trademarks"), and model or catalog numbers "5085" and "5059" (the "Model Numbers"). MacLean uses the Trademarks and Model Numbers in the manufacture, sale, and distribution of certain automatic connectors (the "MacLean Power Connectors"). MacLean alleges that the Defendants have been selling or offering to sell Ningbo Fastlink connectors in association with MacLean Trademarks and Model Numbers. In so doing, MacLean asserts that the Defendants have committed torts against it and likewise have violated statutory law; additionally, MacLean alleges that it has suffered (and will continue to suffer) injuries resulting from these activities. MacLean's causes of action include the following:

MacLean alleges that Defendants have violated the Lanham Act, 15 U.S.C. § 1141(1) *et seq.*, by selling or offering for sale, automatic connectors identified by the Trademarks. MacLean additionally alleges that Defendants have violated the act by using the Model Numbers in connection with the sale of automatic connectors to create further confusion with respect to the source of the counterfeit automatic connectors.

MacLean further alleges that Defendants' use of the Trademarks in interstate commerce amounts to unfair competition and involves false designations of origin and false and misleading representations in violation of 15 U.S.C. § 1125(a).

Additionally, MacLean alleges that Defendants' use of the Trademarks constitutes a deceptive trade practice in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS § 510/2 *et seq.*, insofar as it passes off their products as those of MacLean; causes a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certificate of MacLean's products; causes a likelihood of confusion or misunderstanding as to the affiliation, connection or association with certification by MacLean; or represents that Defendants' products have approval or sponsorship that they do not have.

MacLean also alleges common law trademark infringement because Defendants' conduct causes, and continues to cause, confusion with MacLean's distinctive Trademarks. MacLean contends that consumers are likely to be confused as to affiliation, connection, or association with MacLean, or as to origin, sponsorship, or approval of MacLean of the Ningbo Fastlink connectors.

MacLean alleges that the Defendants unjustly enrich themselves by selling and passing off their respective products as MacLean Power Connectors through the use of infringement, imitation and misappropriation of the Trademarks and Model Numbers. Accordingly, MacLean alleges that the Defendants' unauthorized use constitutes the common law tort of unfair competition.

## II.   CNA'S STATEMENT OF NATURE AND BASIS OF CNA'S DEFENSE

The crux of MacLean's claims, as stated by MacLean's in their request for the Temporary Restraining Order, is that CNA "was importing and distributing ***counterfeit*** automatic connections . . ." [Emphasis Added]. This is a trademark infringement case, not a patent infringement case. The Trademark Act defines counterfeit as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. §1127. A

trademark is used with a product when "it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale." 15 U.S.C. §1127. As shown in the photographs taken by MacLean's representatives of CNA's products and their packaging (included in the Appendix to Plaintiff's request for the Temporary Restraining Order), CNA made no such use of MacLean's alleged marks.

CNA has filed its Answer and Affirmative Defenses, denying MacLean's entitlement to any relief under the Complaint. Due to MacLean's own acts and/or omissions, CNA was unaware of MacLean's claim of ownership in the alleged marks. The terms constituting MacLean's alleged marks are recognized and used by the relevant public as the name of the products – not as marks. MacLean's own authorized distributor, TVC Communications, from which CNA has purchased the subject products, uses the alleged marks as the names of the subject products sold under the brand "MacLean Power Systems." As stated in the affidavit of CNA's Chief Operating Officer (DE#25), CNA never advertised or promoted its products using MacLean's alleged marks. The only place CNA used the term "wirevise" or "wirelink" was on CNA's invoices – which ceased immediately upon receipt of notice of MacLean's claim (to avoid any dispute – not because CNA admits to any wrongdoing). Any use of MacLean's alleged marks by CNA has not infringed MacLean's rights or confused the relevant public. Due to MacLean's own acts and/or omissions, MacLean's alleged rights with respect to the alleged marks are not entitled to protection.

II. **DISCOVERY CONDUCTED BY THE PARTIES TO DATE:**

MacLean and ICC conferred on July 1, 2008, to address Rule 26 issues as part of their preparation for a forthcoming Joint Discovery Plan. MacLean and CNA conducted a separate conference on July 2, 2008, for the same purpose. Apart from these conferences, both CNA and ICC have produced documents relevant to discovery pursuant to this Court's temporary restraining order.

III. **DISCOVERY PROBLEMS ENCOUNTERED TO DATE:**

MacLean, CNA, and ICC have been unable to agree on discovery plan date cutoffs. Additionally, as mentioned above, Ningbo Fastlink, Zhang, and Jin have been entirely unresponsive to MacLean's outreach for a meet and confer on discovery-related matters.

CNA and MacLean have agreed that the production of documents under temporary restraining order will be subject to an "outside counsels' eyes only" confidentiality agreement. CNA has submitted a proposed agreement and protective order for MacLean's review. See Section VII below.

IV. **ESTIMATE OF TIME NEEDED TO COMPLETE FACT DISCOVERY:**

MacLean suggests that November 6, 2008, be the deadline for fact discovery. MacLean believes all fact discovery can be completed within three months. MacLean does not envision any need to request leave to exceed the ten deposition maximum set forth by Rule 30(a)(2)(A)(i). In fact, MacLean believes it will need fewer than ten depositions. Accordingly, MacLean believes that a 120 day period ending on November 6, 2008, is sufficient. CNA, ICC, and MacLean were unable to reach an agreement on this issue.

CNA believes that its defenses require significant fact discovery. MacLean does not sell its products directly; rather it sells them through authorized distributors. MacLean's claims

require quality control and vigilance over the use of its alleged marks by its distributors. Discovery will require depositions of MacLean's distributors and potentially their customers, and will likely require a "public" survey as well. In addition, MacLean's claims rely on allegations as to the quality of its products vis a vis the Ningbo products, which will require technical evaluations of the products and the manufacturing processes. This will require discovery in China. Under the circumstances, CNA suggests that no less than 6 months will be required for fact discovery, and that it will be necessary to exceed the number of depositions and interrogatories otherwise allowed under the Rules. ICC has indicated that it agrees with CNA.

V.  **STATEMENT OF WHETHER EXPERT TESTIMONY WILL BE NECESSARY AND THE ANTICIPATED SCHEDULE FOR RETENTION OF EXPERTS AND SUBMISSION OF REPORTS:**

The parties expressed their expectation that each side will proffer expert testimony in support of their positions. MacLean suggests that (1) all expert reports by either party should be served by December 8, 2008; (2) all responsive expert reports shall be served by January 7, 2009, and (3) all expert depositions shall be completed by February 6, 2009.

As stated above, CNA believes that a survey of the relevant "public" will be required to determine whether there is any confusion or likelihood of confusion as alleged by MacLean. Substantial discovery may be required to determine the identity of the relevant "public." Therefore, CNA suggests that (1) all expert reports by either party be served by April 30, 2009; (2) all responsive expert reports shall be served by May 30, 2009, and (3) all expert depositions shall be completed by June 30, 2009. ICC has indicated that it agrees with CNA.

VI.  **STATEMENT OF WHETHER THERE SHOULD BE ANY LIMITATION PLACED UPON USE OF ANY DISCOVERY DEVICE:**

CNA requests that third-party discovery not be conducted with respect to CNA's customers except pursuant to a Magistrate's order on a showing of good cause. Prior to filing its

request for the Temporary Restraining Order, MacLean purchased CNA's products. MacLean was able to determine that CNA's products and product packaging evidenced no use of the alleged marks. CNA suggests that, in order to avoid a fishing expedition serving only to damage CNA's customer relationships, two threshold questions should be resolved prior to allowing discovery from CNA's customers. Specifically, (a) what use of the alleged marks (other than on the products and product packaging), if any, would rise to the level of any violation of law alleged in MacLean's complaint, and (b) whether CNA's customers would be the primary source of any such evidence?

## VII. SPECIAL DISCOVERY NEEDS OF THE PARTIES (E.G. DISCOVERY OF ELECTRONIC INFORMATION):

The parties expect to agree to the terms of a Protective Order to protect the confidentiality of business and technical information sought by the other parties for purposes of the litigation. A proposed Protective Order will be submitted to Magistrate Judge Ashman for approval shortly, but no later than August 1, 2008.

Additionally, MacLean intends to request that the court set a status hearing shortly after the deadline for the end of fact discovery on November 6, 2008.

## VIII. DATES BY WHICH PARTIES MUST MOVE TO AMEND PLEADINGS OR ADD NEW PARTIES:

MacLean suggests that motions to amend pleadings or add new parties must be filed by the date at which fact discovery ends, November 6, 2008. CNA suggests that motions to amend pleadings or add new parties should be filed by February 28, 2009. ICC has indicated that it agrees with CNA.

IX. **DATES FOR DISPOSITIVE MOTIONS:**

MacLean suggests that summary judgment, and other dispositive motions, shall be filed on or before March 9, 2009, which is thirty days after the close of expert discovery. CNA suggests that summary judgment, and other dispositive motions, be filed on or before July 30, 2009. ICC has indicated that it agrees with CNA.

X. **LIKELIHOOD OF SETTLEMENT:**

MacLean, CNA and ICC are all interested in settling this dispute. The parties hope that during the course of discovery they will be able to reach a settlement by the time this action is ripe for Mediation.

Dated July 8, 2008                                        Respectfully Submitted,

By:     /s/ Ethan. A. Berghoff

Ethan A. Berghoff
BAKER & McKENZIE LLP
One Prudential Plaza
130 East Randolph Drive
Chicago, Illinois 60601
Phone: (312) 861-8000
Fax: (312) 861-2899
E-mail: ethan.a.berghoff@bakernet.com


J. Michael Wermuth
Gonzalez and Wermuth P.L.
8750 N.W. 36th Street, Ste. 425
Miami, Florida 33178-2499
Tel: (305) 715-7157
michael@rgmwlaw.com
*Attorneys for Defendant, Cable Network Associates, Inc.*

8