## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MACLEAN-FOGG COMPANY, a Delaware
Corporation, and MACLEAN POWER, LLC,
a Delaware limited liability company,

       Plaintiffs,

and

NINGBO FASTLINK EQUIPMENT, CO.,
LTD.,  an Alien company, DAVID ZHANG, an
Alien, CHARLIE JIN, an Alien,
INTERNATIONAL CABLE CORPORATION, a
Massachusetts corporation, and
CABLE NETWORK ASSOCIATES, INC., a
Florida corporation,

       Defendants.

_____/

**CASE NO: 08 CV 2593**

**JUDGE GUZMÁN**
**MAGISTRATE JUDGE ASHMAN**

## DEFENDANT'S MOTION FOR DISSOLUTION
## OF THE *EX PARTE* TEMPORARY RESTRAINING ORDER

Defendant, CABLE NETWORK ASSOCIATES, INC. ("CNA"), by and through its

attorneys, Gonzales & Wermuth, P.L. and Baker & McKenzie LLP, hereby moves this Court to

grant the dissolution of the *ex parte* Temporary Restraining Order.  The Memorandum of Law in

support of this Motion is attached hereto.

Dated: July 21, 2008

CABLE NETWORK ASSOCIATES, INC.

By:  s / *Ethan A. Berghoff*
    Ethan A. Berghoff
    One of its Attorneys

    Firm I.D. #28
    Ethan A. Berghoff
    ethan.a.berghoff@bakernet.com
    BAKER & McKENZIE LLP
    130 East Randolph Street
    Suite 3500
    Chicago, Illinois 60601
    (312) 861-8000

    J. Michael Wermuth (Fla. Bar No. 50768)
    michael@rgmwlaw.com
    GONZALEZ & WERMUTH, P.L.
    8750 N.W. 36 Street, Suite 425
    Miami, FL 33178
    Tel: (305) 715-7157
    Fax: (305) 715-8982

CHIDMS1/2603504.1

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MACLEAN-FOGG COMPANY, a Delaware
Corporation, and MACLEAN POWER, LLC,
a Delaware limited liability company,

          Plaintiffs,

and

NINGBO FASTLINK EQUIPMENT, CO.,
LTD., an Alien company, DAVID ZHANG, an
Alien, CHARLIE JIN, an Alien,
INTERNATIONAL CABLE CORPORATION, a
Massachusetts corporation, and
CABLE NETWORK ASSOCIATES, INC., a
Florida corporation,

          Defendants.

_____/

**CASE NO: 08 CV 2593**

**JUDGE GUZMÁN
MAGISTRATE JUDGE ASHMAN**

**MEMORANDUM IN SUPPORT OF MOTION FOR DISSOLUTION OF *EX PARTE*
TEMPORARY RESTRAINING ORDER WITH RESPECT TO
CABLE NETWORK ASSOCIATES, INC.**

Defendant Cable Network Associates, Inc. ("CNA"), by and through its attorneys,

Gonzales & Wermuth, P.L., and Baker & McKenzie LLP, respectfully submits this

memorandum in support of its motion for dissolution of the *ex parte* Temporary Restraining

Order ("TRO") that was granted by this Court on May 22, 2008, upon an *ex parte* motion of

MacLean-Fogg Company and MacLean Power, LLC (collectively, "Plaintiffs").

**<u>PREFATORY NOTE</u>**

The TRO was improvidently granted with respect to CNA, whose sole purported use of

the alleged mark was on a customer invoice to describe a product and not as a means of branding

or marketing. Underpinning the TRO with respect to CNA are allegations that are patently false:

first, that CNA's products are counterfeit (CNA's products, in fact, make no use of Plaintiffs'

marks), and, second, that CNA's use of the alleged marks poses a safety risk to the public (no safety risk has been substantiated or can be reasonably inferred). Finally, the alleged marks, if they existed at one time, are now generic and thus unenforceable, as evidenced by, among other things, the fact that even the Plaintiffs use the alleged marks as product names in advertising materials. Therefore, this Court should dissolve the TRO with respect to CNA.

## BACKGROUND STATEMENT

On May 22, 2008, this Court granted Plaintiffs' *ex parte* motion for a TRO with respect to CNA and several other defendants, premised on the purported improper use of Plaintiffs' alleged marks. The Court ordered that the defendants in the action, including CNA, cease using the alleged marks and preserve and cease all distribution of the products at issue, thus effectively ordering the cessation of their manufacture and sale. *See* Temporary Restraining Order, Docket Entry Nos. 13 and 14. The TRO was continued on June 6, 2008, June 16, 2008, and June 26, 2008, and is set to expire on August 1, 2008. *See* Docket Entry Nos. 16, 17, 18, 20, and 27. CNA believes that the TRO, which has caused CNA considerable financial hardship and loss of goodwill, was improvidently granted with respect to CNA and now brings this motion to dissolve the Order with respect to CNA.

During or about February 2008, CNA, a Florida corporation, received an order from Plaintiffs, posing as a fictitious company called "MFS Distribution," for thirty-five automatic connectors from CNA (the "CNA Connectors"). *See* Affidavit of J. Brendan Conley, Appendix to Plaintiffs' Memorandum in Support of TRO, at Tab 1 ("Conley Affidavit"), ¶¶ 16-17. Upon receipt of the CNA Connectors, Plaintiffs photographed these goods and their packaging. *Id.* Plaintiffs attached these photographs to the Conley Affidavit in support of its application for the TRO. *See* Exhibit A to Conley Affidavit. The photos show that CNA made no use whatsoever

2

of any trademark on the CNA Connectors or its packaging, which bears no brand designation of any kind other than CNA's own logo. *See id.*; Exhibit A to Conley Affidavit. Plaintiffs' sole allegation of CNA's use of the alleged marks is the use of the term "wirevise" and model number "5058" in CNA's invoice to Plaintiffs posing as the fictitious "MFS Distribution" outfit in Bartlett, Illinois. *See* Conley Affidavit at ¶ 17; Exhibit B to Conley Affidavit.

Even though CNA's use of the alleged marks appeared only on the invoice provided to Plaintiffs post-sale and not on products or containers, Plaintiffs sought from this Court a TRO to enjoin CNA from manufacturing or distributing CNA Connectors. This Court granted the TRO on May 22, 2008. Immediately upon receipt of the TRO, CNA ceased using the alleged marks on its invoices. *See* Affidavit of Jeanne Perretty, CNA's Chief Operating Officer (Docket Entry No. 25), a copy of which is attached hereto as Exhibit A.

CNA now respectfully requests that this Court dissolve the TRO with respect to CNA so that CNA may recommence manufacture and distribution of the product.

## STANDARD OF REVIEW

This Court reviews a motion to dissolve the temporary restraining order *de novo* pursuant to the Federal Rules of Civil Procedure. *Consumer Sales v. Digital Equip. Corp.*, 1995 U.S. Dist. LEXIS 13374, *6 (N.D. Ill. Sept. 13, 1995).

## ARGUMENT

This Court should dismiss the TRO with respect to CNA, which has suffered great and undeserved hardship in being ordered to cease manufacture of its products as a result of Plaintiffs' false claims of counterfeit and product safety risk as well as futile attempts to resurrect a dead mark. Although Plaintiffs allege that defendants in this action misused the alleged marks "wirevise" and model number "5058," the claim against CNA consists solely of its use of these

3

alleged marks on a post-sale customer invoice, a use that has been explicitly held not to constitute trademark infringement under the Lanham Act. To obtain the TRO with respect to CNA, Plaintiffs raised the false specters of counterfeiting and safety risk—completely unsubstantiated allegations intended to distract this Court from the fact that Plaintiffs' demand for a TRO was unwarranted. Additionally, the alleged marks are now generic and therefore unenforceable, as evidenced by Plaintiffs' own use of the term "wirevise" as a mere description of goods rather than as a brand name. This Court should therefore dissolve the TRO with respect to CNA's manufacturing and distribution, and should, in any continuation of injunctive relief with respect to CNA, require only that CNA continue not to use the alleged marks for the duration of the litigation.

## I.    CNA HAS NOT INFRINGED THE ALLEGED MARK UNDER THE LANHAM ACT.

CNA's use of the term "wirevise" and an alleged model number in an invoice did not violate the Lanham Act, the statute underpinning Plaintiffs' claim for a TRO. *See* MacLean-Fogg Company's and MacLean Power, LLC's Memorandum in Support of their Application for *Ex Parte* Seizure Order Against International Cable Corporation an Cable Network Associates, Inc. and Temporary Restraining Order and Order to Show Cause for Preliminary Injunction Against Ningbo Fastlink Equipment, Co., Ltd., David Zhang, Charlie Jin, International Cable Corporation and Cable Network Associates, Inc. ("Plaintiffs' Memorandum in Support of TRO"), at p. 1. Plaintiffs' own covert investigation of CNA's use of the alleged marks verified that the sole use was on invoices for products. *See* Affidavit of J. Brendan Conley, at ¶¶ 16, 17. Thus, Plaintiffs have failed to allege any "use in commerce" of the alleged mark, defined in the Lanham Act as being "placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, *or if the nature of the goods makes*

*such placement impracticable*, then on documents associated with the goods or their sale." 15 U.S.C. § 1127 (emphasis added).  Under the plain language of the Lanham Act, a court should not consider an invoice, which is a "document[] associated with the goods or their sale," unless the "nature of the goods" makes placement of the mark on the goods or their containers or labels "impracticable." *Id.*  Such is not the case here, as Plaintiffs have placed before this Court ample photographic evidence that the goods in question readily lend themselves to having the alleged mark placed directly on "containers or the displays associated therewith or on the tags or labels affixed thereto." *See* Exhibit C to Plaintiffs' Memorandum in Support of TRO (showing placement of alleged marks on containers); *see also Application of Chicago Rawhide Mfg. Co.*, 59 C.C.P.A. 963, 455 F.2d 563, 564 (Cust. & Pat. App. 1972) (ruling under prior version of the statute that "use of the mark on a carbon copy of an invoice which copy accompanies the goods 'in containers in which the goods are shipped[]' … does not constitute use on the goods as required by clear and unambiguous language of section 45.").

The proposed order for TRO, which was granted by this Court, makes findings that Plaintiffs are likely to succeed in showing that CNA "used marks" and "used numbers" that are identical to Plaintiffs' alleged marks.  However, this Court has repeatedly recognized that the use of a mark on invoices alone cannot establish "use in commerce" under the Lanham Act. *See S Indus., Inc. v. Ecolab Inc.*, 1999 U.S. Dist. LEXIS 3484, *17-18  (N.D. Ill. Mar. 16, 1999); *S Indus. v. Stone Age Equip.*, 12 F. Supp. 2d 796, 808 (N.D. Ill. 1998) (citing *S Indus., Inc. v. Diamond Multimedia Sys., Inc.*, 991 F. Supp. 1012, 1019 (N.D. Ill. 1998); *The Boss Co. v. Homemaker Rugs, Inc.*, 117 U.S.P.Q. 255, 256; 1958 U.S. Dist. LEXIS 4185, *1 (N.D. Ill. Apr. 16, 1958)).  Moreover, this Court very recently ruled that the use of an alleged mark on an invoice is not "commercial advertising" under section 43(a)(1)(B) of the Lanham Act. *Midwest*

*Canvas Corp. v. Commonwealth Canvas Inc.*, 2008 U.S. Dist. LEXIS 3576, *7-11 (N.D. Ill. Jan. 16, 2008) ("[A]n invoice accompanying an order shipped to a client is not sent for the 'purpose of inducing consumers to buy defendant's goods or services'; the goods accompanying a shipment have already been ordered by the consumer who needs no further inducement to buy them.").

The logic of the *Midwest Canvas* ruling—that use of alleged marks on a post-purchase invoice cannot be an inducement to purchase—would apply in equal measure to Plaintiffs' claims that the use of alleged marks on an invoice creates a likelihood of confusion or mistake as to the products' "origin." *See* Plaintiffs' Complaint for Injunctive and Other Relief, at ¶ 34; *Midwest Canvas*, 2008 U.S. Dist. LEXIS 3576, at *7-11. The Lanham Act provides for relief where the Plaintiff is likely to succeed in showing that the use is "likely" to cause confusion or mistake or to deceive. 15 U.S.C.S. § 1125(a)(1)(B). But under the facts of this case, such confusion is highly *un*likely. Just as a post-purchase invoice bearing Plaintiffs' alleged mark could not induce a buyer to buy, neither is a post-purchase invoice "likely" to cause confusion as to the goods' origin. *See id.*; *Midwest Canvas*, 2008 U.S. Dist. LEXIS 3576, at *7-11.

In sum, CNA did not use the alleged mark in commerce within the meaning of the Lanham Act. On the basis of both the plain language of the Lanham Act and the rulings of this Court, Plaintiffs have failed to make the requisite showing that CNA's use of the mark on an invoice constituted a Lanham Act violation, created a likelihood of confusion as to the origin of the goods, or otherwise warranted the TRO.

## II.    PLAINTIFFS FALSELY ALLEGED THAT CNA'S PRODUCTS ARE COUNTERFEIT.

CNA's products are not counterfeit products of MacLean or any other vendor but are genuine products. A "counterfeit" is, under the Lanham Act, "a spurious mark which is identical

with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. To obtain

the *ex parte* TRO, Plaintiffs claimed that CNA "was importing and distributing *counterfeit*

automatic connectors ... ." Plaintiffs' Memorandum in Support of TRO, at pp. 6 (emphasis

added). However, before seeking the TRO, Plaintiffs had direct photographic evidence that

CNA had made no use whatsoever of the alleged marks on the CNA-provided products or their

packaging, containers, or labels. *See* Exhibit A to Conley Affidavit. Thus, before applying for

the TRO, Plaintiffs had proof, albeit deceptively obtained, that the CNA products were *not*

counterfeit.[1]

Because the products did not incorporate, bear, or constitute any of the alleged marks, the

claim that they are "counterfeit" is erroneous. See 15 U.S.C. § 1127. Moreover, because the

items did not bear the mark, the Court should not enjoin CNA (or any other party) from

*manufacturing* the products in question. *See* 15 U.S.C. § 1116(a). The Lanham Act provides

courts of jurisdiction with "power to grant injunctions, according to the principles of equity and

upon such terms as the court may deem reasonable, to prevent the violation of any right of the

registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under

subsection (a), (c), or (d) of section 43 [15 USCS § 1125]." 15 U.S.C. § 1116(a). The Act also

permits a court to grant an order "providing for the seizure of goods and counterfeit marks . . .

and the means of making such marks, and records documenting the manufacturer, sale, or receipt

of things involved" in violation of section 32(10)(a) of the Lanham Act. *See* 15 U.S.C. §

1116(d)(1)(A).

However, in cases in which courts have enjoined the manufacture of goods, they did so

because the *product itself* infringed an alleged mark. *See, e.g., Processed Plastic Co. v. Warner*

---

[1] Plaintiffs' affirmative act of reaching into Florida to purchase non-infringing products for the sole purposes of attempting to build a case against CNA also raises the question of due process and personal jurisdiction (included as an affirmative defense in CNA's answer). *See* Docket Entry No. 23, at p. 6.

*Communications, Inc.*, 675 F.2d 852 (7th Cir. 1982) (allowing plaintiff to enjoin defendants from manufacturing toy car that replicated one from plaintiff's television show). The *Processed Plastic* court recognized that the cessation of manufacture went hand-in-hand with the fact that the very production of the goods was a trademark infringement when it wrote, "[T]he most corrosive and irreparable harm to trademark infringement is the inability of the victim to control the *nature and quality of defendants' goods.*" *Id.* at 858 (emphasis added); *see also International Kennel Club, Inc. v. Mighty Star, Inc.*, 846 F. 2d 1079 (7th Cir. 1988) (affirming injunction against manufacturer of toy dogs bearing name of plaintiff organization); *National Council of YMCA v. Human Kinetics Publishers, Inc.*, No. 05-C-5034, 2006 U.S. Dist. LEXIS 24027, *19 (N.D. Ill. Mar. 15, 2006) (enjoining manufacture of printable and downloadable study materials where "infringement in issue [wa]s a verbatim copying of [plaintiff's] name").

In contrast, the present TRO requires that CNA cease manufacture of goods that neither bear nor constitute the alleged mark. Any injunctive relief issued against CNA should merely require continued disuse of the alleged marks, rather than compel CNA to cease manufacture and distribution of products that bear no alleged marks.

## III. PLAINTIFFS FALSELY CLAIMED THAT CNA'S USE OF THE ALLEGED MARK POSED A RISK OF HARM TO THE PUBLIC.

The connectors sold by CNA do not constitute a risk of harm to the public, nor have Plaintiffs offered any basis for their allegation that public safety is somehow at risk as a result of defendants' alleged "counterfeiting." *See* Plaintiffs' Memorandum in Support of TRO, at pp. 8-9. Moreover, the cases cited by Plaintiffs in support of their claim that an alleged "safety risk" warrants a TRO under the Lanham Act in this case are inapposite, as in those dated precedents the products themselves were diseased or defective. *See id.* at p. 12 (citing *Ewing v. Mytinger & Casselberrry*, 339 U.S. 594, 599-600 (1950) (characterized by Plaintiffs as "holding that

summary seizure of mislabeled products is appropriate in order to protect public health"); *North Am. Cold Storage Co. v. City of Chi.*, 211 U.S. 306, 315-21 (1908) ("seizure of allegedly diseased poultry")).  Here, no product defect or mislabeling is alleged.  Plaintiffs have alleged only that CNA used alleged marks on an invoice, and a "safety risk" cannot logically be inferred from such an allegation.

Plaintiffs' illogical claim that "[b]ecause the MacLean Power Connectors are associated with an excellent safety record and enjoy a long history of consistent product performance, the counterfeiting of the MacLean Power Connectors creates a significant risk to public health and safety" is without support.  *See* Plaintiffs' Memorandum in Support of TRO, at p. 11.  Plaintiffs have alleged no injury whatsoever to any person or property as the result of the use of any connectors sold by a defendant, nor offered a comparison of safety records of these products. *See id.*  Rather, Plaintiffs speculate that automatic connectors sold by defendants (referred to as "Ningbo Connectors") may be installed improperly and that this is not the case with Plaintiff-manufactured connectors (referred to as "MacLean Connectors") because Plaintiffs sell MacLean Connectors solely through authorized distributors and agents who are trained to ensure that the end-users will install them properly, thus supposedly preventing harm to the public.  *Id.* at pp. 11-12.

Despite claims of superior user training, however, none of the affidavits of Plaintiffs' product distributors filed in support of the request for the TRO refer to any training or safety measures whatsoever taken by Plaintiffs to ensure the proper installation of the MacLean Connectors.  *See* Appendix to Plaintiffs' Memorandum in Support of TRO, at Tabs 18 and 19. In fact, one of MacLean's authorized distributors, TVC Communications ("TVC"), sold to CNA more than 2,000 MacLean Connectors shortly before CNA became aware of Plaintiffs or this

dispute. A true and correct copy of the invoice is attached hereto as Exhibit B. At the time of this purchase of MacLean Connectors, CNA did not know that TVC was an authorized dealer of the Plaintiffs' products. Yet, TVC did not train CNA representatives or employees or otherwise take any measures to ensure that CNA knew how to install the MacLean Connectors.

Furthermore, the end users of the connectors in question, regardless of their origin or manufacturer, are unlikely to be confused as to the risks associated with the use and installation of the products. As alleged by Plaintiffs, the type of connectors at issue are "highly specialized automatic connectors used in anchoring guy strain and messenger cables and splicing together electrical and telecommunication lines." Plaintiffs' Memorandum in Support of TRO, at p. 2. They "are of critical importance when electric lines are downed" and can be installed "within seconds." *Id.* Although Plaintiffs do not identify their expected end users, they are, presumably highly sophisticated individual cable installers or technicians of telecommunications companies. Such sophisticated end users would be unlikely to be deceived by the nature and safety risks associated with these "highly specialized" products merely because Plaintiffs' alleged mark appeared on an invoice.

Thus, while Plaintiffs theorize that injury could result from improper installation of a Ningbo Connector, they do not state why any such risk exceeds the risk resulting from installation of a MacLean Connector. *See id.* at pp. 11-12. Because Plaintiffs provide no basis from which this Court could conclude that CNA's purported use of the alleged mark on an invoice or the installation of CNA products puts the public safety at risk, the Court should dissolve the TRO with respect to CNA.

10

## IV.    THE ALLEGED MARKS ARE GENERIC TERMS AND THEREFORE UNENFORCEABLE.

Even if the use of the term "wirevise" and the model number on an invoice were sufficient to constitute an improper use of the mark under the Lanham Act, the TRO could not stand.    CNA was unaware of Plaintiffs' alleged marks.    Furthermore, the alleged "marks" are generic terms for products.    "A generic or common descriptive term is one which is commonly used as the name or description of a kind of goods.    It cannot become a trademark under any circumstances."    *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F. 2d 75, 79 (7th Cir. 1977); *see also Hickory Farms, Inc. v. Snackmasters, Inc.*, 500 F. Supp. 789, 793 (N.D. Ill. 2007); *Thomas & Betts Corp. v. Panduit Corp.*, 48 F. Supp. 2d 1088, 1094 (N.D. Ill. 1999).    The MacLean mark has become generic "because the public ... decide[d] to use the trademark to designate not the particular manufacturer's brand but the entire product comprising all the competing brands[...]."    *See IHSA v. GTE Vantage, Inc.*, 99 F. 3d 244, 247 (7th Cir. 1996) (citing *W. T. Rogers Co. v. Keene*, 778 F. 2d 334, 347 (7th Cir. 1985); *King-Seeley Thermos Co. v. Alladin Indus., Inc.*, 321 F. 2d 577, 579 (2d Cir. 1963); *DuPont Cellophane Co. v. Waxed Products Co.*, 85 F .2d 75, 81-82 (2d Cir. 1936); *Bayer Co. v. United Drug Co.*, 272 F. 505, 509 (S.D.N.Y. 1921)).    Once the public's use of the term makes it generic, "the trademark is dead no matter how vigorously the holder has tried to prevent this usage."    *IHSA*, 99 F. 3d at 247; *see also Hickory Farms, Inc. v. Snackmasters, Inc.*, 509 F. Supp. 2d 716, 723 (N.D. Ill. 2007) ("[O]nce a mark has entered the public domain beyond recall, policing is of no consequence to a resolution of whether a mark is generic." (internal quotations omitted)).

Ample evidence shows that the alleged marks are now generic and therefore beyond recall.    Plaintiffs' own distributors used the alleged marks as product names.    The Plaintiffs' distributor TVC, on its website, uses the alleged marks "wirevise" and "wirelink" to designate

types of products.  *See* Exhibit C.  TVC represents that it sells the "wirevise" and the "wirelink"

under the mark "MacLean Power Systems [logo]."  *Id.*

Even more surprising, in light of this action, is that Plaintiffs use their own alleged marks

as product names.  TVC's website provides access to the Plaintiffs' product catalog, which

clearly shows the "MacLean Power Systems [logo]" and also clearly indicates that Plaintiffs use

the alleged marks as the names of the products rather than as trademarks.  *See* composite Exhibit

D.  Having used the term "wirevise" as a product descriptor rather than as a mark in its

advertising and publicity, Plaintiffs can hardly fault CNA for doing the same on a mere invoice.

Despite this contradiction, Plaintiffs have instituted this and other litigation against different

parties in an attempt to enforce the alleged marks, offering affidavits filed in Civil Action No. 07

C 0657.  *See* Appendix to Plaintiffs' Memorandum in Support of TRO, at Tabs 18 and 19.  These

multiple lawsuits appear to demonstrate that Plaintiffs have realized that the alleged marks have

become generic and now desire to "claw back" the irretrievable.

The uses by Plaintiffs' distributor and by Plaintiffs themselves as product-type

designations indicate that the alleged marks have become generic and therefore are

unenforceable.  Plaintiffs should not be permitted to enforce rights in the alleged marks that

Plaintiffs themselves, as well as their own distributors, use as mere product names.  This Court

should not permit Plaintiffs to penalize CNA, a third party, with a continuing injunction

requiring the cessation of operations for doing exactly what Plaintiffs and their distributors do

with respect to the alleged marks.

## CONCLUSION

This Court should dissolve the TRO with respect to CNA.  Plaintiffs have failed to show

that CNA used in commerce any of the alleged marks in violation of the Lanham Act, and they

12

have wholly failed to allege how CNA's use of the alleged marks on an invoice creates confusion as to product origin under the Act.  Plaintiffs' invocation of public safety concerns to justify the TRO is meritless, as Plaintiffs have failed to show any product defect or any difference in product performance or any difference in training between Plaintiffs' and CNA's customers. Furthermore, by their own acts and omissions, Plaintiffs have caused their alleged marks to be used as nouns, that is, as names of products, as demonstrated in Plaintiffs' own advertising promoting MacLean Connectors under the mark MacLean Power Systems [logo].  In short, justification for an *ex parte* request of seizure or preliminary injunction against CNA was lacking, especially given that Plaintiffs had, prior to such request, obtained CNA connectors that clearly evidenced no use whatsoever of the alleged marks.

**WHEREFORE**, Defendant CNA hereby requests that the *ex parte* TRO be immediately dissolved with respect to CNA so that CNA may resume manufacture and distribution of products and that CNA be awarded its reasonable attorneys fees and costs and such further relief as this Court deems just and proper in connection with these proceedings.

Dated:    July 21, 2008.

Respectfully submitted,


/s/  *Ethan A. Berghoff*_____
Ethan A. Berghoff
**BAKER & McKENZIE LLP**
ethan.a.berghoff@bakernet.com
130 East Randolph Street
Suite 3500
Chicago, Illinois 60601
(312) 861-8000

J. Michael Wermuth (Fla. Bar No. 50768)
michael@rgmwlaw.com
GONZALEZ & WERMUTH, P.L.
8750 N.W. 36 Street, Suite 425
Miami, FL 33178
Tel: (305) 715-7157
Fax: (305) 715-8982

*Attorneys for Defendant*
*Cable Network Associates, Inc.*

CHIDMS1/2635844.1

14

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MACLEAN-FOGG COMPANY, a Delaware
Corporation, and MACLEAN POWER, LLC,
a Delaware limited liability company,

        Plaintiffs,

and

NINGBO FASTLINK EQUIPMENT, CO.,
LTD., an Alien company, DAVID ZHANG, an
Alien, CHARLIE JIN, an Alien,
INTERNATIONAL CABLE CORPORATION, a
Massachusetts corporation, and
CABLE NETWORK ASSOCIATES, INC., a
Florida corporation,

        Defendants.

_____/

**CASE NO: 08 CV 2593**

**JUDGE GUZMAN**
**MAGISTRATE JUDGE ASHMAN**


**AFFIDAVIT OF JEANNE PERRETTY**

I, Jeanne Perretty, being first duly sworn on oath, states as follows:

    1.    I am the Chief Operating Officer of Cable Network Associates, Inc.
("**CableNetwork**"), a company incorporated under the laws of Florida with its principal place of
business located in Broward County, Florida, and I am duly authorized by CableNetwork to
make this affidavit under oath on its behalf.

    2.    As Chief Operating Officer of CableNetwork, I have knowledge of the
information contained in this affidavit and could competently testify thereto.

    3.    CableNetwork does not conduct business in Illinois.

    4.    CableNetwork does not own, use, or possess real estate located in the State of
Illinois.

    5.    CableNetwork does not advertise in Illinois.

    6.    MacLean Power, under the name of MFS Distribution, called CableNetwork to
order 35 wirevises on or about February 2008 (the "**Order**").

7.   The amount of the Order was $116.48, which was to be paid, and was paid, in Broward County, Florida.

8.   The invoice corresponding to the Order is attached to Mr. J. Brendan Conley's affidavit, which was filed in this case (the "**Invoice**") (see Tabs 1 and 4 of the attachments to Plaintiffs' Memorandum in Support of Their Application for Ex Parte Seizure Order Against Defendants and Temporary Restraining Order, et cet.).

9.   The Invoice states on its face that it is subject to the terms and conditions posted on CableNetwork's website (the "**Terms and Conditions**").

10.   A copy of the Terms and Conditions is attached hereto as Exhibit A.

11.   The Terms and Conditions state that all actions and proceedings relating directly to enforcement of the terms of the Order shall be litigated exclusively in a state court located in Broward County, Florida.

12.   CableNetwork has not consented to jurisdiction in Illinois by contract or otherwise.

13.   The products shipped under the Invoice were not manufactured by the Plaintiffs; rather, they were private-labeled using CableNetwork's logo (private-labeled wirevises and wirelinks, are referred to herein as the "**CableNetwork Products**").

14.   The CableNetwork Products do not affix any trademark other than CableNetwork's logo, as shown clearly by the photographs of the CableNetwork Product packaging attached to the affidavit of Mr. J. Brendan Conley (see Tabs 1 and 3 of the attachments to Plaintiffs' Memorandum in Support of Their Application for Ex Parte Seizure Order Against Defendants and Temporary Restraining Order, et cet.).

15.   CableNetwork does not promote wirevises or wirelinks; rather, it sources these products on an as-needed basis in response to customer requests. Depending on time frame and pricing, CableNetwork acquired private-labeled product or other third-party product. For that reason, CableNetwork Products have never been advertised or promoted by CableNetwork on or in its website, sales literature, or otherwise.

16.   The only place CableNetwork used the term "wirevise" or "wirelink" was on CableNetwork's invoices -- which ceased immediately upon receipt of notice of Plaintiffs' claim (to avoid any dispute -- not because CableNetwork admits to any wrongdoing).

17.   In an attempt to address Plaintiffs' concerns and to resolve this matter amicably, CableNetwork provided to Plaintiffs the redacted sales report, attached hereto as Exhibit B, showing the product description (as it appears on the corresponding

2

invoices), the invoice number and date, and the number of units sold for all of the CableNetwork Products (i.e., private-labeled wirevise and wirelink).

18.    CableNetwork has sold 80,000 of the CableNetwork Products (see Exhibit B), and the price of those products was typically in the 2 dollar range.

19.    As shown on the invoice and on Exhibit B, the terms "wirevise" and "wirelink" were used on CableNetwork's invoices only as the name of the product in the product description (not as a trademark).

20.    CableNetwork was unaware of any claim by Plaintiffs or anyone else that the terms "wirevise" or "wirelink" were alleged trademarks.

21.    For example, CableNetwork has purchased wirevises from TVC Communications (see invoice attached hereto as Exhibit C).

22.    After learning of this litigation, we reviewed Plaintiffs' website and found that TVC Communications is one of Plaintiffs' authorized dealers (see copy of website attached hereto as Exhibit D).

23.    Not even TVC Communications uses the terms "wirevise" or "wirelink" as trademarks; rather, TVC Communications uses those terms as the name of the product itself (see Exhibit C hereto; see also copy of website attached hereto as Exhibit E).

24.    As shown by Exhibit E hereto, TVC Communications represents that it sells the wirevise and wirelink (as the product names) under the brand MacLean Power Systems (logo), and Exhibit C shows the term "wirevise" as the name of the product.

25.    Also, if you click on the link for the wirevise and wirelink "product detail" on TVC Communications' website, a pop-up window opens to pages from the MacLean Power Systems catalogue that also uses the "strandvise" and "strandlink" terms as the name of the product – not as trademarks (see copy of a screen shot attached hereto as Exhibit F).

26.    The sales report provided to the Plaintiffs (i.e., Exhibit B) was redacted because CableNetwork's customer relationships and pricing structure are confidential and proprietary to CableNetwork.

27.    CableNetwork has every intention of respecting Plaintiffs' rights, if any, in their alleged trademarks; it being understood, however, that the confidential and proprietary information and relationships of CableNetwork should be respected as well.

FURTHER AFFIANT SAYETH NOT.

By: _____

3

Jeanne Perretty
Chief Operating Officer
Cable Network Associates, Inc.

STATE OF FLORIDA
BROWARD COUNTY

The foregoing instrument was sworn and subscribed before me this 23rd day of June 2008, by Jeanne Perretty, who personally appeared before me at the time of notarization, and who is personally known to me or who has produced _DL  FL_ _(631)-432-62-916-0_ as identification and who did take an oath.

Notary Public

Carmela J. Roman de Hernandez
MY COMMISSION # DD 412038
EXPIRES: July 27, 2009
Bonded Thru Budget Notary Services

4

# EXHIBIT A

CableNetwork Associates, Inc. - Terms and Conditions.

# CABLENETWORK ASSOCIATES, INC.

## Sales Order/Invoice Terms and Conditions

**1. Acceptance.** This sales order acknowledgment (the "Acknowledgment") shall operate as an acceptance of Buyer's Purchase Order only upon the express condition of Buyer's assent that the terms and conditions contained herein shall be the sole and exclusive terms and conditions applicable to the sale of the goods listed and/or described herein (the "Goods").

**2. Prices.** Unless otherwise agreed in writing, the prices and charges specified herein do not include any costs related to freight, demurrage transportation, insurance, special packaging or insulation, or inspection, or similar charges, all of which must be paid by Buyer.

**3. Taxes.** The prices specified herein do not include sales, use, excise, or similar taxes, and any sales, use, excise, or similar taxes presently applicable to or hereafter levied on the sale of the Goods shall be paid by Buyer. In lieu of such payment, Buyer may provide Seller with a tax exemption certificate acceptable to the appropriate taxing authority.

**4. Terms of Payment.** All terms of payment set forth herein are subject to the approval of Seller's credit department. No discounts are allowed on taxes or freight charges. Unless otherwise agreed to in writing, payment in full is due within terms specified on Sales Order/invoice. Buyer agrees to pay interest on all past due invoices at a rate of 1.5% per month from the date such payment is due until paid in full; provided, however, that if such interest rate exceeds the maximum rate permitted under applicable law, then interest shall be charged at the maximum rate permitted under such law. In addition, Buyer agrees to pay for any costs incurred by Seller in collecting amounts due, including, but not limited to, reasonable attorneys' fees, private investigation fees and costs, court costs and other costs associated with collection incurred at both the trial and the appellate levels and at any bankruptcy proceeding.   Buyer's failure to pay any Invoice in full within thirty (30) days of the due date shall constitute an Event of Default hereunder.

**5. Cancellations and Returns.** Purchase orders received and accepted by CableNetwork may not be cancelled, modified or rescinded except by a writing signed by CableNetwork and Buyer. If modified, rescinded or terminated, Buyer shall pay CableNetwork termination charges determined by accepted accounting principles, included but not limited to work-in-process costs, termination costs incurred by CableNetwork due to Buyer's termination, plus a reasonable profit on the entire quantity order. Buyer must obtain prior authorization for returns, which authorization CableNetwork may grant at its sole discretion. Returns must be (a) made in original cartons and in resalable condition, (b) within ninety (90) days of receipt. Returns for goods purchased from CableNetwork shall be  subject to a restocking charge of not less than 20% of the stated invoice price.

**6. Title and Right of Repossession.** Title to the Goods shall remain in Seller until such time as the price shall have been paid in full. If the price has not been paid in full at the time of delivery, Buyer will, at Seller's option, execute any financing statement or other document necessary to perfect Seller's security interest in the goods which are the subject matter of the Sales Order/Invoice. Seller reserves the right and Buyer hereby consents to Seller's right to retake possession of the Goods upon default by the Buyer of any payment.

**7. Collection.** Buyer acknowledges that in the event of nonpayment, its account may be assigned for collection.

**8. Transportation and Routing.** Unless otherwise agreed in writing prior to shipment, Seller shall have sole control and discretion with respect to mode of transportation, routing and any other matters connected with, related to or involved in transportation of the Goods.

**9. Risk of Loss.** The risk of loss to the Goods shall pass to the Buyer when the goods are duly tendered so as to enable the Buyer to take delivery. When Goods after delivery are destroyed by fire, theft or accident or other cause, the Buyer shall remain liable for any unpaid balance under this Sales Order/Invoice. The Buyer agrees to insure the Goods set forth in the Sales Order/Invoice for the benefit of Seller as its interest may appear.

**10. Force Majeure.** Seller shall not be responsible or liable for any delay or failure to deliver any or all of the Goods if such delay or failure is caused by any act of God, fire, flood, explosion, war, insurrection, riot, embargo, action, statute, ordinance, regulation or

<u>EXHIBIT A</u>

CableNetwork Associates, Inc. - Terms and Conditions.

order of any government or agent thereof, shortage of labor, material, fuel, supplies or transportation; strike or other labor dispute, or any other cause, contingency, occurrence or circumstance of any nature beyond Seller's control, whether or not similar to those specified above, that prevents, hinders or interferes with manufacture, assembly or delivery of the Goods. Any such cause, contingency, occurrence or circumstance shall release Seller from performance of its obligations hereunder. If Seller is partially excused from performance, either by force of the foregoing or by the provisions of the Florida's Uniform Commercial Code, it shall not be required to make any allocation of production, shipments or deliveries in accordance with Section 672-615(2), Florida Statutes, or any equivalent or successor provision thereto. In no event will Seller be liable for any special, incidental or consequential damages to Buyer caused by Seller's delay in performance or failure to perform which is not excused under the foregoing.

**11. Shipping Dates.** Shipping dates specified in any Sales Order/Invoice or otherwise communicated to Buyer are estimates given to the best of Seller's knowledge based upon conditions existing at the time of the order and upon information furnished by Buyer. Seller will, in good faith, endeavor to ship by the estimated shipping date, but shall not be responsible for any delay or any damage arising therefrom. Seller does not and shall not guarantee any shipping date unless such guarantee and the terms thereof are specifically stated in writing. Any such guarantee shall be strictly limited to the exact terms so stated.

**12. Right to Assurance of Performance.** If the financial responsibility of Buyer becomes impaired or unsatisfactory to Seller, or Buyer is in default to Seller under any Sales Order/Invoice or any other contract, advance cash payment, then and in that event, satisfactory security shall be given by Buyer upon demand by Seller and shipments may be withheld until such payment or security is received. Buyer shall make no deductions (including those for alleged damages) from payments due hereunder.

**13. Right to Stop Delivery in Transit.** If Buyer becomes insolvent, repudiates, or fails to make payment when due, before delivery to the Buyer or to the purchaser from the Buyer, Seller shall have the right to stop delivery of the Goods

**14. Inspection.** Unless otherwise agreed in writing, Buyer may inspect the Goods at the place of manufacture or at such other place as Seller shall designate. Buyer shall inspect the Goods immediately upon receipt, but in no case shall Buyer have the right to inspect, reject or revoke Buyer acceptance three (3) days after receipt.

**15. No Warranties.** It is understood by the parties that anything said about the Goods by agents or representatives of Seller were merely expressions of opinion by those agents and that there are NO EXPRESS WARRANTIES except as to the description of the Goods involved herein. THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED; THE GOODS INVOLVED HEREIN ARE NOT WARRANTED TO BE MERCHANTABLE OR FIT FOR ANY PARTICULAR PURPOSE WHATSOEVER AND IT IS UNDERSTOOD THAT THE CUSTOMER HAS NOT RELIED ON SELLER TO MAKE THE SELECTION. There is NO WARRANTY, REPRESENTATION OR CONDITION OF ANY KIND, express or implied and none shall be implied by law. Except as otherwise provided herein, quality shall be in accordance with Seller's specifications. Final determination of the suitability of the material for the use contemplated by Buyer is the sole responsibility of Buyer, and Seller shall have no responsibility in connection with such suitability.

**16. Damages.** SELLER SHALL NOT BE LIABLE FOR PROSPECTIVE PROFITS OR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES; it is expressly understood and agreed that the Buyer's sole and exclusive remedy shall be repair or replacement of nonconforming goods, and that SELLER SHALL NOT BE LIABLE FOR DAMAGES FOR INJURY TO PERSONS OR PROPERTY. Buyer assumes all risk and liability for loss, damage or injury to persons or property of Buyer or others arising out of use or possession of any Goods sold hereunder

**17. Waiver of Subrogation.** Each party waives (for itself and its insurance carrier) all its rights against the other party and the other party's respective employees, agents, suppliers and subcontractors to recover damages caused by fire or other perils to the extent such damages are covered by property insurance. This provision shall have no effect to the extent that it invalidates or otherwise limits the insurance coverage of a party.

**18. Permissible Variations.** All Goods shall be subject to standard manufacturing and commercial variations and practices of the respective manufacturer. Seller reserves the right to ship overages or underages of weight, length, size and/or quantity in accordance with Seller's standard practices.

**19. All Sales Final/ Changes and Cancellation.** All sales are final. Goods cannot be returned to Seller without Seller's written consent. A Sales Order may be changed or cancelled only with Seller's written consent and then only upon such terms as will protect Seller from any losses. As to any goods tendered under this Sales Order which the Customer accepts in any manner provided in Section 672.606, Florida Statutes, the Buyer shall have no right to revoke Buyer's acceptance, and any attempted

<u>EXHIBIT A</u>

CableNetwork Associates, Inc. - Terms and Conditions.

revocation shall be without effect.

**20. No Partnership or Joint Venture.** The parties agree that nothing herein shall create any agency, employment or a partnership, joint venture relationship or fiduciary relationship.

**21. Assignment.** This Acknowledgment shall be binding upon, and inure to the benefit of the parties as permitted herein, and their successors and assigns. Without Seller's prior written consent, Buyer shall not assign all or any portion of its rights or obligations under any Sales Order/Invoice or this Acknowledgment. Any purported assignment made without such consent shall be void. In no event shall any transfer or assignment of this Acknowledgment relieve the Buyer of any liability hereunder.

**22. Waiver.** Waiver by Seller of any breach of any provision contained herein shall not constitute or be deemed a waiver of any other breach of such provision or of any other provision. Seller's delay or failure to enforce any of its rights hereunder shall not be deemed a waiver of such rights.

**23. Governing Law/Jurisdiction/Venue.** Buyer waives any claim of jurisdiction or venue in the county or state of Buyer's residence or place of business, and agrees that, should suit be instituted to enforce the terms of any Sales Order/Invoice all actions and proceedings relating directly thereto shall be litigated exclusively in a state court located in Broward County, Florida, and Buyer expressly consents to the jurisdiction of such court and to venue therein and Buyer further consents to service of process in any such action or proceeding by certified or registered mailing of the summons and complaint directed to the parties at their respective addresses set forth in the Sales Order/Invoice. The Sales Order/Invoice shall be governed by and construed in accordance with the laws of the State of Florida.

**24. Entire Agreement.** The Sales Order/Invoice is intended as a complete and exclusive statement of the agreement of the parties and shall prevail over the terms contained in any Buyer purchaser order.

**25. Litigation.** Each party agrees that in any litigation, suit, action or proceeding, whether at law or in equity, which arises out of or relates to this Acknowledgement or any Sales Order/Invoice, any and all transactions contemplated hereunder, the performance hereof, or the relationship created hereby, trial shall be to a court of competent jurisdiction and not to a jury. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY. Each party has read and understands the effect of this jury waiver provision.

**26. Severability.** The invalidity in whole or in part of any covenant, promise or undertaking, or any section, subsection, paragraph, sentence, clause, phrase or word, or any provision of any Sales Order/Invoice or this Acknowledgement shall not affect the validity of the remaining portions thereof.

**Sales Order-Invoice Terms and Conditions (04-20-2007)**

EXHIBIT A

# EXHIBIT B



EXHIBIT B

June 13, 2008  4:15 PM
Page          2



CableNetwork Associates, Inc.

**Customer/Item Statistics by Invoice**

| Customer No. Item Number | Customer Name Product Description | Quantity | Unit of Measure | Amount | Margin | Discount | Profit % |
|---|---|---|---|---|---|---|---|
| � | � | | | ▄ | | | |
| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
| 10/23/07 | INV-34385 | 500 | EA | | | | |
| Total 5058 | | 500 | EA | | | | |
| ▄ | Total Customer | | | — | | | |
| ▄ | ▄ | | | ▄ | | | |
| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
| 05/17/08 | INV-29997 | 1,800 | EA | | | | |
| 05/17/08 | INV-29997 | 0 | EA | | | | |
| Total 5058 | | 1,800 | EA | | | | |
| ▄ | Total Customer | | | — | | | |
| ▄ | ▄ | | | ▄ | | | |
| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
| 05/09/08 | INV-28894 | 100 | EA | | | | |
| 10/02/08 | INV-31135 | 800 | EA | | | | |
| 10/02/08 | INV-31135 | 0 | EA | | | | |
| 03/05/08 | INV-35205 | 200 | EA | | | | |
| Total 5058 | | 1,100 | EA | | | | |
| ▄ | Total Customer | | | — | | | |
| ▄ | ▄ | | | ▄ | | | |
| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
| 01/09/08 | INV-34885 | 100 | EA | | | | |
| 03/24/08 | INV-35319 | 25 | EA | | | | |

<u>**EXHIBIT B**</u>



CableNetwork Associates, Inc.

**Customer/Item Statistics by Invoice**

| Customer No. Item Number | Customer Name Product Description | Quantity | Unit of Measure | Amount | Margin | Discount | Profit % |
|---|---|---|---|---|---|---|---|
| | Total    5058 | 125 | EA | | | | |
| | Total Customer | | | | | | |
| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
| 08/18/06    INV-30750 | | 40 | EA | | | | |
| | Total    5058 | 40 | EA | | | | |
| | Total Customer | | | | | | |
| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
| 10/01/07    INV-34234 | | 50 | EA | | | | |
| 04/29/08    INV-35541 | | 60 | EA | | | | |
| | Total    5058 | 110 | EA | | | | |
| | Total Customer | | | | | | |
| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
| 03/15/07    INV-32498 | | 100 | EA | | | | |
| | Total    5058 | 100 | EA | | | | |
| | Total Customer | | | | | | |
| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
| 05/18/08    INV-35532 | | 500 | EA | | | | |

EXHIBIT B

June 13, 2008   4:15 PM
Page      4



CableNetwork Associates, Inc.

**Customer/Item Statistics by Invoice**

| Customer No. Item Number | Customer Name Product Description | Quantity | Unit of Measure | Amount | Margin | Discount | Profit % |
|---|---|---|---|---|---|---|---|
| 05/16/08  INV-35832 | | 0 | EA | | | | |
| | Total    5058 | 500 | EA | | | | |
| | **Total Customer** | | | | | | |
| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
| 09/28/07  INV-34231 | | 100 | EA | | | | |
| | Total    5058 | 100 | EA | | | | |
| | **Total Customer** | | | | | | |
| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
| 11/21/07  INV-34584 | | 1,000 | EA | | | | |
| | Total    5058 | 1,000 | EA | | | | |
| | **Total Customer** | | | | | | |
| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
| 10/24/07  INV-34395 | | 200 | EA | | | | |
| | Total    5058 | 200 | EA | | | | |
| | **Total Customer** | | | | | | |
| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
| 03/14/08  INV-35278 | | 4,000 | EA | | | | |

<u>**EXHIBIT B**</u>

June 13, 2008    4:15 PM
Page        5



CableNetwork Associates, Inc.

Customer/Item Statistics by Invoice

| Customer No. Item Number | Customer Name Product Description | Quantity | Unit of Measure | Amount | Margin | Discount | Profit % |
|---|---|---|---|---|---|---|---|
| | Total    5058 | 4,000 | EA | | | | |
| | Total Customer | | | — | | | |
| | Total by Salesperson | | | — | | | |
| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
| 07/25/06 | INV-30590 | 50 | EA | | | | |
| 04/20/07 | INV-32805 | 50 | EA | | | | |
| 09/05/07 | INV-33997 | 50 | EA | | | | |
| 04/25/08 | INV-35514 | 100 | EA | | | | |
| | Total    5058 | 250 | EA | | | | |
| | Total Customer | | | — | | | |
| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
| 04/13/07 | INV-32736 | 1,300 | EA | | | | |
| 04/13/07 | INV-32737 | 400 | EA | | | | |
| 04/20/07 | INV-32800 | 1,550 | EA | | | | |
| 04/20/07 | INV-32800 | 0 | EA | | | | |
| 07/13/07 | INV-33499 | 5,500 | EA | | | | |
| 07/13/07 | INV-33500 | 700 | EA | | | | |
| 07/13/07 | INV-33499 | 0 | EA | | | | |
| 07/13/07 | INV-33500 | 0 | EA | | | | |
| 07/23/07 | INV-33586 | 623 | EA | | | | |
| 07/23/07 | INV-33586 | 0 | EA | | | | |
| 08/02/07 | INV-33666 | 600 | EA | | | | |
| 08/02/07 | INV-33667 | 2,530 | EA | | | | |
| 11/16/07 | INV-34554 | 1,200 | EA | | | | |
| | Total    5058 | 14,403 | EA | | | | |

EXHIBIT B



**CableNetwork Associates, Inc.**

Customer/Item Statistics by Invoice

| Customer No. Item Number | Customer Name Product Description | Quantity | Unit of Measure | Amount | Margin | Discount | Profit % |
|---|---|---|---|---|---|---|---|
| | **Total Customer** | | | | | | |
| | | | | | | | |
| **5058** | Wirevise, Deadend 102-114 Mess | | | | | | |
| 01/03/07 | INV-31883 | 300 | EA | | | | |
| 03/19/07 | INV-32518 | 250 | EA | | | | |
| | Total    5058 | 550 | EA | | | | |
| | **Total Customer** | | | | | | |
| | | | | | | | |
| **5058** | Wirevise, Deadend 102-114 Mess | | | | | | |
| 06/13/06 | INV-30235 | 100 | EA | | | | |
| | Total    5058 | 100 | EA | | | | |
| | **Total Customer** | | | | | | |
| | | | | | | | |
| **5058** | Wirevise, Deadend 102-114 Mess | | | | | | |
| 06/20/07 | INV-33319 | 10 | EA | | | | |
| 07/31/07 | INV-33646 | 290 | EA | | | | |
| 07/31/07 | INV-33646 | 0 | EA | | | | |
| 12/19/07 | INV-34775 | 200 | EA | | | | |
| | Total    5058 | 500 | EA | | | | |
| | **Total Customer** | | | | | | |
| | | | | | | | |
| **5058** | Wirevise, Deadend 102-114 Mess | | | | | | |

EXHIBIT B



CableNetwork Associates, Inc.

Customer/Item Statistics by Invoice

| Customer No.<br>Item Number | Customer Name<br>Product Description | Quantity | Unit of<br>Measure | Amount | Margin | Discount | Profit<br>% |
|---|---|---|---|---|---|---|---|
| 08/20/07 | INV-33810 | 100 | EA | | | | |
| 08/20/07 | INV-33810 | 0 | EA | | | | |
| Total    5058 | | 100 | EA | | | | |
| | Total Customer | | | | | | |
| 5058 | Wireylse, Deadend 102-114 Mess | | | | | | |
| 02/15/07 | INV-32242 | 2,084 | EA | | | | |
| 02/15/07 | INV-32242 | 0 | EA | | | | |
| 05/17/07 | INV-33022 | 1,050 | EA | | | | |
| 07/13/07 | INV-33502 | 1,000 | EA | | | | |
| 07/13/07 | INV-33502 | 0 | EA | | | | |
| 07/27/07 | INV-33613 | 100 | EA | | | | |
| Total    5058 | | 4,234 | EA | | | | |
| | Total Customer | | | | | | |
| 5058 | Wireylse, Deadend 102-114 Mess | | | | | | |
| 04/25/07 | INV-32847 | 300 | EA | | | | |
| Total    5058 | | 300 | EA | | | | |
| | Total Customer | | | | | | |
| 5058 | Wireylse, Deadend 102-114 Mess | | | | | | |
| 10/31/06 | INV-31404 | 300 | EA | | | | |
| 02/23/07 | INV-32304 | 1,950 | EA | | | | |
| 02/23/07 | INV-32304 | 0 | EA | | | | |
| Total    5058 | | 2,250 | EA | | | | |

EXHIBIT B



June 13, 2008   4:15 PM
Page         8

CableNetwork Associates, Inc.

**Customer/Item Statistics by Invoice**

| Customer No. Item Number | Customer Name Product Description | Quantity | Unit of Measure | Amount | Margin | Discount | Profit % |
|---|---|---|---|---|---|---|---|
| ████ | Total Customer | | | | | | |
| ████ | ██████████ | | ████ | | | | |
| **5058** | Wirevise, Deadend 102-114 Mess | | | | | | |
| 06/19/06  INV-30376 | | 500 | EA | | | | |
| 09/18/07  INV-33297 | | 400 | EA | | | | |
| 03/05/08  INV-35206 | | 400 | EA | | | | |
| Total   5058 | | 1,300 | EA | | | | |
| ████ | Total Customer | | | | | | |
| ████ | ██████████ | | ████ | | | | |
| **5058** | Wirevise, Deadend 102-114 Mess | | | | | | |
| 01/14/08  INV-34914 | | 15 | EA | | | | |
| Total   5058 | | 15 | EA | | | | |
| ████ | Total Customer | | | | | | |
| ████ | ██████████ | | ████ | | | | |
| **5058** | Wirevise, Deadend 102-114 Mess | | | | | | |
| 11/22/06  INV-31584 | | 100 | EA | | | | |
| 03/28/07  INV-32601 | | 100 | EA | | | | |
| Total   5058 | | 200 | EA | | | | |
| ████ | Total Customer | | | | | | |
| ████ | ██████████ | | ████ | | | | |
| **5058** | Wirevise, Deadend 102-114 Mess | | | | | | |
| 02/08/08  INV-35065 | | 35 | EA | | | | |

**EXHIBIT B**



CableNetwork Associates, Inc.

Customer/Item Statistics by Invoice

| Customer No.<br>Item Number | Customer Name<br>Product Description | Quantity | Unit of<br>Measure | Amount | Margin | Discount | Profit<br>% |
|---|---|---|---|---|---|---|---|
| | Total    5058 | 35 | EA | | | | |
| | Total Customer | | | — | | | |
| | Total by Salesperson | | | — | | | |

| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
|---|---|---|---|---|---|---|---|
| 07/18/06 | INV-30530 | 2,003 | EA | | | | |
| 07/18/06 | INV-30532 | 1,059 | EA | | | | |
| 10/25/06 | INV-31354 | 6 | EA | | | | |
| 11/13/06 | INV-31467 | 1,000 | EA | | | | |
| 01/31/07 | INV-32106 | 1,000 | EA | | | | |
| 01/31/07 | INV-32107 | 200 | EA | | | | |
| 03/07/07 | INV-32417 | 60 | EA | | | | |
| 08/17/07 | INV-33803 | 4 | EA | | | | |
| 09/26/07 | INV-34183 | 2 | EA | | | | |
| 04/21/08 | INV-35486 | 500 | EA | | | | |
| 04/21/08 | INV-35487 | 1,110 | EA | | | | |
| 04/21/08 | INV-35488 | 515 | EA | | | | |
| | Total    -5058 | 7,459 | EA | | | | |

| | Total Customer | | | — | | | |

| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
|---|---|---|---|---|---|---|---|
| 05/03/06 | INV-29835 | 2 | EA | | | | |
| 05/03/06 | INV-29835 | 0 | EA | | | | |
| 11/15/06 | INV-31509 | 5,000 | EA | | | | |
| 11/15/06 | INV-31509 | 0 | EA | | | | |
| 04/15/08 | INV-35439 | 50 | EA | | | | |
| 04/17/08 | INV-35453 | 294 | EA | | | | |
| 04/17/08 | INV-35454 | 367 | EA | | | | |
| 04/17/08 | INV-35455 | 785 | EA | | | | |
| 04/17/08 | INV-35457 | 1,167 | EA | | | | |

EXHIBIT B



June 13, 2008   4:15 PM
Page      10

CableNetwork Associates, Inc.

**Customer/Item Statistics by Invoice**

| Customer No. Item Number | Customer Name Product Description | Quantity | Unit of Measure | Amount | Margin | Discount | Profit % |
|---|---|---|---|---|---|---|---|
| 04/17/08  INV-35458 | | 189 | EA | | | | |
| Total    5058 | | 7,854 | EA | | | | |

Total Customer

5058   Wirevise, Deadend 102-114 Mess

| 11/01/06  INV-31416 | 200 | EA |
| 11/29/06  INV-31617 | 2,400 | EA |
| 11/29/06  INV-31617 | 0 | EA |
| 03/14/07  INV-32479 | 150 | EA |
| 10/01/07  INV-34238 | 370 | EA |
| 03/10/08  INV-35297 | 50 | EA |
| Total    5058 | 3,170 | EA |

Total Customer

5058   Wirevise, Deadend 102-114 Mess

| 08/08/06  INV-30193 | 154 | EA |
| Total    5058 | 154 | EA |

Total Customer

5058   Wirevise, Deadend 102-114 Mess

| 11/17/06  INV-31538 | 100 | EA |
| 02/02/07  INV-32136 | 50 | EA |
| 10/02/07  INV-34256 | 200 | EA |
| 10/04/07  SCM-000704 | -200 | EA |
| 10/04/07  INV-34272 | 200 | EA |
| 02/04/08  INV-35014 | 100 | EA |

<u>EXHIBIT B</u>



June 13, 2008   4:15 PM
Page      11

CableNetwork Associates, Inc.

Customer/Item Statistics by Invoice

| Customer No.<br>Item Number | Customer Name<br>Product Description | Quantity | Unit of<br>Measure | Amount | Margin | Discount | Profit<br>% |
|---|---|---|---|---|---|---|---|
| | Total    5058 | 480 | EA | | | | |
| | Total Customer | | | — | | | |
| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
| 05/29/06   INV-30388 | | 300 | EA | | | | |
| 05/15/07   INV-32997 | | 500 | EA | | | | |
| 03/18/08   INV-35290 | | 1,000 | EA | | | | |
| | Total    5058 | 1,800 | EA | | | | |
| | Total Customer | | | — | | | |
| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
| 07/20/06   INV-30559 | | 50 | EA | | | | |
| | Total    5058 | 50 | EA | | | | |
| | Total Customer | | | — | | | |
| 5058 | Wirevise, Deadend 102-114 Mess | | | | | | |
| 07/26/06   INV-30602 | | 90 | EA | | | | |
| 07/26/06   INV-30602 | | 0 | EA | | | | |
| | Total    5058 | 90 | EA | | | | |
| | Total Customer | | | — | | | |

EXHIBIT B





June 13, 2008   4:17 PM
Page        1

CableNetwork Associates, Inc.

**Customer/Item Statistics by Invoice**

| Customer No. Item Number | Customer Name Product Description | Quantity | Unit of Measure | Amount | Margin | Discount | Profit % |
|---|---|---|---|---|---|---|---|

5059          Splice, Wirelink, for 109 Mess

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 08/21/07 | INV-33844 | 1,000 | EA | | | | |
| 08/21/07 | INV-33844 | 0 | EA | | | | |
| Total | 5059 | 1,000 | EA | | | | |

Total Customer

5059          Splice, Wirelink, for 109 Mess

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 07/21/06 | INV-30569 | 500 | EA | | | | |
| 10/23/07 | INV-34385 | 100 | EA | | | | |
| Total | 5059 | 600 | EA | | | | |

Total Customer

5059          Splice, Wirelink, for 109 Mess

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 05/09/06 | INV-29894 | 100 | EA | | | | |
| 10/02/06 | INV-31135 | 400 | EA | | | | |
| Total | 5059 | 500 | EA | | | | |

Total Customer

5059          Splice, Wirelink, for 109 Mess

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12/13/07 | INV-34740 | 1,100 | EA | | | | |
| 12/13/07 | INV-34740 | 0 | EA | | | | |

<u>EXHIBIT B</u>



June 13, 2008   4:17 PM
Page      2

CableNetwork Associates, Inc.

**Customer/Item Statistics by Invoice**

| Customer No. Item Number | Customer Name Product Description | Quantity | Unit of Measure | Amount | Margin | Discount | Profit % |
|---|---|---|---|---|---|---|---|
| 01/02/08 | INV-34849 | 1,500 | EA | | | | |
| 01/02/08 | INV-34849 | 0 | EA | | | | |
| 01/09/08 | INV-34865 | 200 | EA | | | | |
| Total 5059 | | 2,800 | EA | | | | |
| | Total Customer | | | | | | |
| 5059 | Splice, Wirelink, for 109 Mess. | | | | | | |
| 10/01/07 | INV-34234 | 20 | EA | | | | |
| 04/23/08 | INV-35541 | 10 | EA | | | | |
| Total 5059 | | 30 | EA | | | | |
| | Total Customer | | | | | | |
| 5059 | Splice, Wirelink, for 109 Mess. | | | | | | |
| 02/23/07 | INV-32302 | 200 | EA | | | | |
| Total 5059 | | 200 | EA | | | | |
| | Total Customer | | | | | | |
| 5059 | Splice, Wirelink, for 109 Mess. | | | | | | |
| 03/15/07 | INV-32498 | 50 | EA | | | | |
| Total 5059 | | 50 | EA | | | | |
| | Total Customer | | | | | | |

**EXHIBIT B**



June 13, 2008   4:17 PM
Page        3

CableNetwork Associates, Inc.

Customer/Item Statistics by Invoice

| Customer No. Item Number | Customer Name Product Description | Quantity | Unit of Measure | Amount | Margin | Discount | Profit % |
|---|---|---|---|---|---|---|---|
| **5059** | **Splice, Wirelink, for 109 Mess.** | | | | | | |
| 10/24/07 | INV-34395 | 50 | EA | | | | |
| 10/24/07 | INV-34395 | 0 | EA | | | | |
| | Total   5059 | 50 | EA | | | | |
| | Total Customer | | | | | | |
| | | | | | | | |
| **5059** | **Splice, Wirelink, for 109 Mess.** | | | | | | |
| 04/03/08 | INV-35378 | 100 | EA | | | | |
| | Total   5059 | 100 | EA | | | | |
| | Total Customer | | | | | | |
| | Total by Salesperson | | | | | | |
| | | | | | | | |
| **5059** | **Splice, Wirelink, for 109 Mess.** | | | | | | |
| 07/13/07 | INV-33500 | 280 | EA | | | | |
| 07/13/07 | INV-33500 | 0 | EA | | | | |
| 07/23/07 | INV-33586 | 85 | EA | | | | |
| 07/23/07 | INV-33586 | 0 | EA | | | | |
| 08/02/07 | INV-33666 | 131 | EA | | | | |
| 08/02/07 | INV-33667 | 740 | EA | | | | |
| 11/08/07 | INV-34497 | 1,200 | EA | | | | |
| | Total   5059 | 2,416 | EA | | | | |
| | Total Customer | | | | | | |

EXHIBIT B



June 13, 2008   4:17 PM
Page      4

CableNetwork Associates, Inc.

**Customer/Item Statistics by Invoice**

| Customer No. Item Number | Customer Name Product Description | Quantity | Unit of Measure | Amount | Margin | Discount | Profit % |
|---|---|---|---|---|---|---|---|
| **5059** | **Splice, Wirelink, for 109 Mess** | | | | | | |
| 08/29/06  INV-30858 | | 500 | EA | | | | |
| 01/03/07  INV-31883 | | 250 | EA | | | | |
| 03/19/07  INV-32518 | | 250 | EA | | | | |
| 08/19/07  INV-33313 | | 200 | EA | | | | |
| Total    5059 | | 1,200 | EA | | | | |
| | Total Customer | | | | | | |
| **5059** | **Splice, Wirelink, for 109 Mess** | | | | | | |
| 08/20/07  INV-33319 | | 295 | EA | | | | |
| 07/31/07  INV-33646 | | 5 | EA | | | | |
| 07/31/07  INV-33646 | | 0 | EA | | | | |
| 12/19/07  INV-34775 | | 100 | EA | | | | |
| Total    5059 | | 400 | EA | | | | |
| | Total Customer | | | | | | |
| **5059** | **Splice, Wirelink, for 109 Mess** | | | | | | |
| 08/20/07  INV-33810 | | 50 | EA | | | | |
| 08/20/07  INV-33810 | | 0 | EA | | | | |
| Total    5059 | | 50 | EA | | | | |
| | Total Customer | | | | | | |
| **5059** | **Splice, Wirelink, for 109 Mess** | | | | | | |
| 02/15/07  INV-32242 | | 179 | EA | | | | |
| 05/17/07  INV-33022 | | 222 | EA | | | | |
| 07/13/07  INV-33502 | | 200 | EA | | | | |

**EXHIBIT B**



June 13, 2008   4:17 PM
Page        5

CableNetwork Associates, Inc.

Customer/Item Statistics by Invoice

| Customer No. Item Number | Customer Name Product Description | Quantity | Unit of Measure | Amount | Margin | Discount | Profit % |
|---|---|---|---|---|---|---|---|
| 07/13/07 | INV-33502 | 0 | EA | | | | |
| 07/27/07 | INV-33513 | 200 | EA | | | | |
| Total | 5059 | 801 | EA | | | | |
| | Total Customer | | | | | | |
| 5059 | Splice, Wirelink, for 109 Mess | | | | | | |
| 10/31/06 | INV-31404 | 250 | EA | | | | |
| 04/09/08 | INV-35406 | 500 | EA | | | | |
| Total | 5059 | 750 | EA | | | | |
| | Total Customer | | | | | | |
| 5059 | Splice, Wirelink, for 109 Mess | | | | | | |
| 01/14/08 | INV-34814 | 15 | EA | | | | |
| Total | 5059 | 15 | EA | | | | |
| | Total Customer | | | | | | |
| 5059 | Splice, Wirelink, for 109 Mess | | | | | | |
| 03/28/07 | INV-32601 | 100 | EA | | | | |
| Total | 5059 | 100 | EA | | | | |
| | Total Customer | | | | | | |

EXHIBIT B



June 13, 2008   4:17 PM
Page        6

CableNetwork Associates, Inc.

<u>Customer/Item Statistics by Invoice</u>

| Customer No. Item Number | Customer Name Product Description | Quantity | Unit of Measure | Amount | Margin | Discount | Profit % |
|---|---|---|---|---|---|---|---|
| 5059 | Splice, Wirelink, for 109 Mess | | | | | | |
| 08/05/06   INV-30152 | | 100 | EA | | | | |
| Total   5059 | | 100 | EA | | | | |
| | Total Customer | | | | | | |
| 5059 | Splice, Wirelink, for 109 Mess | | | | | | |
| 10/19/07   INV-34354 | | 100 | EA | | | | |
| 10/19/07   INV-34354 | | 0 | EA | | | | |
| Total   5059 | | 100 | EA | | | | |
| | Total Customer | | | | | | |
| | Total by Salesperson | | | | | | |
| 5059 | Splice, Wirelink, for 109 Mess | | | | | | |
| 07/18/06   INV-30530 | | 100 | EA | | | | |
| 07/18/06   INV-30531 | | 84 | EA | | | | |
| 07/18/06   INV-30532 | | 40 | EA | | | | |
| 09/14/06   INV-31004 | | 5 | EA | | | | |
| 11/13/06   INV-31487 | | 261 | EA | | | | |
| 01/31/07   INV-32107 | | 200 | EA | | | | |
| Total   5059 | | 690 | EA | | | | |
| | Total Customer | | | | | | |
| 5059 | Splice, Wirelink, for 109 Mess | | | | | | |

<u>EXHIBIT B</u>





CableNetwork Associates, Inc.

**Customer/Item Statistics by Invoice**

| Customer No. Item Number | Customer Name Product Description | Quantity | Unit of Measure | Amount | Margin | Discount | Profit % |
|---|---|---|---|---|---|---|---|
| 11/15/06 | INV-31509 | 100 | EA | | | | |
| 05/21/07 | INV-33044 | 11 | EA | | | | |
| 05/21/07 | INV-33046 | 78 | EA | | | | |
| 05/21/07 | INV-33047 | 109 | EA | | | | |
| 05/21/07 | INV-33048 | 165 | EA | | | | |
| 07/16/07 | INV-33529 | 100 | EA | | | | |
| 07/16/07 | INV-33530 | 100 | EA | | | | |
| 07/16/07 | INV-33531 | 100 | EA | | | | |
| 07/16/07 | INV-33529 | 0 | EA | | | | |
| 07/16/07 | INV-33530 | 0 | EA | | | | |
| 07/16/07 | INV-33531 | 0 | EA | | | | |
| 11/07/07 | SCM-000721 | -100 | EA | | | | |
| 11/07/07 | SCM-000722 | -100 | EA | | | | |
| 11/07/07 | INV-34492 | 100 | EA | | | | |
| 11/07/07 | INV-34493 | 100 | EA | | | | |
| | Total    5059 | 763 | EA | | | | |

| | Total Customer | | | | | | |

| 5059 | Splice, Wirelink, for 109 Mess | | | | | | |
| 11/01/06 | INV-31418 | 50 | EA | | | | |
| 11/29/06 | INV-31617 | 80 | EA | | | | |
| 03/14/07 | INV-32479 | 150 | EA | | | | |
| 08/10/08 | INV-35297 | 10 | EA | | | | |
| | Total    5059 | 290 | EA | | | | |

| | Total Customer | | | | | | |

| 5059 | Splice, Wirelink, for 109 Mess | | | | | | |
| 06/08/06 | INV-30199 | 98 | EA | | | | |
| 08/07/07 | INV-33194 | 1,000 | EA | | | | |
| | Total    5059 | 1,098 | EA | | | | |

EXHIBIT B



**EXHIBIT B**

# EXHIBIT C

06/05/2008  10:21  9543121077                    CABLENETWORK                    PAGE  03/03



**Remit To:**
TVC Communications, L.L.C.
P.O. Box 933299
Atlanta, GA  31193-3299

## Invoice

| | |
|---|---|
| Invoice Date | : 5/12/2008 |
| Terms | : Net 30 Days |
| Terms of delivery | : PREPAID AND ADD |
| Customer Account # | : 101372 |
| Invoice number | : IV00035392 |
| RMA number | : |
| Purchase Order Number | : 00020435 |
| Your ref. | : |
| Sales order | : SO0024532 |
| Salesperson | : ALOPEZDEME |

Page number ................: 1    of 1

**Sold To:**
CABLE NETWORK ASSOC. INC.
5001 NW 13TH AVENUE
DEERFIELD BEACH, FL 33064

**Ship To:**
CABLE NETWORK ASSOC
5001 NW 13TH AVE
DEERFIELD BEACH, FL 33064

| Item number | Description | Ordered Qty | Shipped Qty UM | Unit price | Per | Extension |
|---|---|---|---|---|---|---|
| R5058 | DEADEND WIREVISE .102 - .114 | 2,400 | 2,400 EA | 2.64 | 1 | 6,336.00 |

Quantity : 2,400.00  Shipping warehouse : 600

FINANCIAL CHARGES OF 1.5 %
PER MONTH WILL BE ASSESSED
ON EVERY INVOICE THAT IS DUE

• THIS IS TO CERTIFY THAT ALL ITEMS
  IN THIS INVOICE ARE TRUE AND CORRECT.

• RETURNS WILL NOT BE ACCEPTED WITHOUT
  AN INVOICE.

• 20 % RESTOCKING FEE WILL BE CHARGED ON
  ALL RETURNS ACCEPTED FOR CREDIT.

• NO RETURNS/CREDITS FOR SPECIAL ORDERS.

Tracking Information  Other: Call for tracking info

| Merchandise Value | Misc. charges | Taxable Amount | Sales tax | Total due |
|---|---|---|---|---|
| 6,336.00 | 0.00 | 0.00 | 0.00 | 6,336.00 USD |

| Misc. charges details | Sales tax details |
|---|---|
| No charges to display | No tax to display |

**For questions regarding this invoice, please call 717-838-3306.**

Affirmative Action Notice: vendors and subcontractors are notified that they may be subject to the provisions of 41CFR Section 60-1.4, 41CFR Section 60-250.4 and Section 60-741.4 with respect to affirmative action program and plan requirements.

**SEE TERMS AND CONDITIONS ON REVERSE**

EXHIBIT C                                                          Did not paid

# EXHIBIT D

MacLean Power Systems - Distributor Locator                    Page 1 of 2



# EXHIBIT E

TVC | Products & Manufacturers | Product Details                    Page 1 of 1



# Product Details

Wirevise & Wirelink
Features:

Rated to hold a minimum of 90% of RBS of the strand used

Application:
For deadend applications with overhead or down guy wire.

"Universal Grade" are recommended for use with Alumoweld, Aluminized, EHS and Galvanized Steel.

"All Grades" are recommended for use on Common Grade, Siemens-Martin, High Strength Utility Grade, Galvanized and Aluminized steel strand.

Brand.....................:

MACLEAN POWER SYSTEMS

Product Line.................:    Hardware
Item Group..................:    Dead Ends & Splices

Product Detail...............:    Click here for more Information.

<<< BACK                                        PRINTER FRIENDLY VERSION

DELIVERING PRODUCTS, KNOWLEDGE, SERVICE & EXPERIENCE    © TVC COMMUNICATIONS, L.L.C. | 800 AIRPORT ROAD, ANNVILLE PA | 888.644.6075

EXHIBIT E

# EXHIBIT F



EXHIBIT F

**EXHIBIT B**

06/05/2008  10:21  9543121077                  CABLENETWORK                           PAGE  03/03



**Remit To:**
TVC Communications, L.L.C.
P.O. Box 933299
Atlanta, GA  31193-3299

**Sold To:**
CABLE NETWORK ASSOC. INC.
5001 NW 13TH AVENUE
DEERFIELD BEACH, FL 33064-

## Invoice

Invoice Date ..............: 5/12/2008
Terms ......................: Net 30 Days
Terms of delivery .........: PREPAID AND ADD
Customer Account # ....: 101372
Invoice number ...........: IV00035352
RMA number .............:
Purchase Order number : 00020436
Your ref. ...................:
Sales order ................: SO0024532
Salesperson ..............: ALOPEZDEME

Page number ............: 1     of  1

**Ship To:**
CABLE NETWORK ASSOC
5001 NW 13TH AVE
DEERFIELD BEACH, FL 33064

| Item number | Description | Ordered Qty | Shipped Qty | UM | Unit price | Per | Extension |
|---|---|---|---|---|---|---|---|
| R5058 | DEADEND WIREVISE .102 - .114 | 2,400 | 2,400 | EA | 2.64 | 1 | 6,336.00 |

Quantity : 2,400.00  Shipping warehouse : 600

*FINANCIAL CHARGES OF 1.5 %
PER MONTH WILL BE ASSESSED
ON EVERY INVOICE THAT IS DUE*

- THIS IS TO CERTIFY THAT ALL ITEMS IN THIS INVOICE ARE TRUE AND CORRECT.
- RETURNS WILL NOT BE ACCEPTED WITHOUT AN INVOICE.
- 20 % RESTOCKING FEE WILL BE CHARGED ON ALL RETURNS ACCEPTED FOR CREDIT.
- NO RETURNS/CREDITS FOR SPECIAL ORDERS.



<u>Tracking Information</u>  Other: Call for tracking info

| Merchandise Value | Misc. charges | Taxable Amount | Sales tax | Total due |
|---|---|---|---|---|
| 6,336.00 | 0.00 | 0.00 | 0.00 | 6,336.00 USD |

| Misc. charges details | Sales tax details |
|---|---|
| No charges to display | No tax to display |

For questions regarding this invoice, please call 717-838-3306.

Affirmative Action Notice: vendors and subcontractors are notified that they may be subject to the provisions of 41CFR Section 60-1.4, 41CFR Section 60-250.4 and Section 60-741.4 with respect to affirmative action program and plan requirements.

**SEE TERMS AND CONDITIONS ON REVERSE**

*Did not paid*

**EXHIBIT C**

888.644.6075 | HOME | CONTACT US | SEARCH | [        ] GO

# TVC
## Communications

PRODUCTS & MANUFACTURERS | CUSTOMER SUPPORT | CORPORATE | NEWS & EVENTS | INTERNATIONAL | MAXCELL GROUP | WHITE SANDS | VIKIMATIC | MARATHON

**PRODUCTS**

[ search products.... ] GO

- all products
- broadband products
- coaxial cable
- connectors & heatshrink
- data - high speed
- digital simulcast
- digital voice
- drop materials
- fiber optics
- FTTx
- hardware
  - Brantner Cabling DDE
  - Braid Cable Damper
  - Anchors
  - Arms & Braces
  - Bolts
  - Brackets & Straps
  - Clamps
  - Clips
  - Dead Ends & Splices
  - Eyes
  - Grounding Materials
  - Guy Hardware
  - Guy Markers
  - Lashers
  - Lashing Wire & Strand
  - Magic Wire
  - Pole Steps
  - Screws
  - Spacers
  - Staples
  - Test Boards
  - Washer & Nuts
- headend equipment
- marathon
- test equipment
- tools & safety equipment
- twisted pair
- underground equipment

## Product Details

**Wirevise & Wirelink**

Features:

Rated to hold a minimum of 90% of RBS of the strand used

Application:
For deadend applications with overhead or down guy wire.

"Universal Grade" are recommended for use with Alumoweld, Aluminized, EHS and Galvanized Steel.

"All Grades" are recommended for use on Common Grade, Siemens-Martin, High Strength Utility Grade, Galvanized and Aluminized steel strand.



Brand............................:


MACLEAN POWER SYSTEMS

Product Line..................:     Hardware
Item Group....................:     Dead Ends & Splices

Product Detail...............:     Click here for more information.

[ <<< BACK ]                                          [ PRINTER FRIENDLY VERSION ]

DELIVERING PRODUCTS, KNOWLEDGE, SERVICE & EXPERIENCE     © TVC COMMUNICATIONS, L.L.C.  |  800 AIRPORT ROAD, ANNVILLE PA  |  888.644.6075

**EXHIBIT D**





**MACLEAN
POWER
SYSTEMS**

# Connectors and Clamps
## Wirevise and Wirelink

February 2004

### Application

Designed to support both ends of self
supporting multi-pair drop wire that uses
a solid galvanized steel messenger wire
that is integrated into the jacket in a
figure 8 configuration
Used to splice galvanized steel
messenger mid-span of a service drop

### Features

Minimum holding strength is 90% RBS of
wire specified







| Wirelink Catalog Number | Dimensions (inches) | | Wirevise Catalog Number | Dimensions (inches) | | | Wire Range | | Standard Pack |
|---|---|---|---|---|---|---|---|---|---|
| | A | B | | A | B | C | inches | mm | |
| 5057 5057N | 2.94 | .39 | 5056 | 5.5 | 1.55 | 1.6 | .062-.100 *16 USSWG* *15 USSWG* *14 USSWG* *13 USSWG* | 1.4-2.6 *16 BWG* *15 BWG* *14 BWG* *13 BWG* | 100 |
| 5059 5059N | 2.94 | .43 | 5058 | 5.5 | 1.47 | 1.6 | .091-.114 *13 USSWG* *12 USSWG* | 2.3-2.9 *13 BWG* *12 BWG* | 100 |
| 5063 5063N | 4.06 | .55 | 5062 | 7.7 | 2.46 | 1.5 | .120-.135 *11 USSWG* *10 USSWG* | 3.1-3.5 *11 BWG* *10 BWG* | 100 |
| 5039 | 9.00 | 1.03 | 5199 | 10.2 | 4.66 | 1.6 | .140-.215 *9 USSWG* *8 USSWG* *7 USSWG* *6 USSWG* *5 USSWG* | 3.7-5.5 *9 BWG* *8 BWG* *7 BWG* *6 BWG* | 50 |

Notes:
1)  N = polyolefin covered Wirelink
2)  5056 available in .083 range only as 5056T